**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **HENRY KINDRED, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-502-CWB** |
| | ) | |
| **MARTIN O'MALLEY,** [1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

I.     **Introduction and Administrative Proceedings**

Henry Kindred, Jr. ("Plaintiff") filed both an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on August 22, 2019—alleging disability onset as of February 5, 2018 due to rib problems, osteoarthritis (neck, both hands, both wrists), cataracts (both eyes), lower back problem, and right knee problem.  (Tr. 58, 76-77, 83-84).[2]  Plaintiff's claims were denied at the initial level on January 9, 2020 and again after reconsideration on December 10, 2020.  (Tr. 58, 82, 89-91, 107-08, 124-27, 132).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 58, 149-51).  The ALJ subsequently heard the case on August 19, 2021 (Tr. 1-39, 58), at which time testimony was given by Plaintiff (Tr. 5-31, 38) and by a vocational expert (Tr. 32-37).  The ALJ took the matter under advisement and issued a written decision on September 8, 2021 that found Plaintiff not disabled.  (Tr. 58-70).

---

[1]     Martin O'Malley became Commissioner for the Social Security Administration on December 20, 2023 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]     References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 5, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right wrist degenerative arthritis, right wrist four corner fusion, multilevel cervical degenerative disc disease, lumbar degenerative disc disease, right ankle osteoarthritis, right knee osteoarthritis, obesity, bilateral cataract surgery, corneal dystrophy, and myopia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can frequently handle and finger with the right dominant upper extremity; and he must avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery.

6. The claimant is capable of performing past relevant work as an apartment maintenance worker and small parts assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 60, 61, 63, 68, 69). On April 7, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 44-48), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to remand the case for a new hearing and further consideration. (Doc. 15 at p. 15). The court construes Plaintiff's supporting brief (Doc. 15) as a

motion for summary judgment and the Commissioner's opposition brief (Doc. 18) as a competing motion for summary judgment.  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 10, 11), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record

in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4]  *McDaniel* is an SSI case.  Nonetheless, because the same sequence applies to claims for disability insurance benefits brought under Title II, SSI cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.    Issues on Appeal

Plaintiff raises three issues on appeal: (1) whether the ALJ's RFC finding was based upon substantial evidence; (2) whether the ALJ properly investigated the facts in determining Plaintiff's

---

a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

past relevant work; and (3) whether the ALJ failed to pose complete hypotheticals to the VE. (*See* Doc. 15 at p. 1).

## IV.   Discussion

### A.   Whether the ALJ's RFC finding was based upon substantial evidence

Plaintiff argues that the ALJ failed to account for his severe ocular/visual impairments in the RFC or discuss how such severe impairments impacted his ability to return to his past relevant work.  (Doc. 15 at pp. 8-9).  An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *See Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor."  *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.   The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate

a specific functional limitation.'") (citation omitted).   "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).   Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.   *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).   Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."   *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

The ALJ found that Plaintiff had the following severe impairments: "right wrist degenerative arthritis, right wrist four corner fusion, multilevel cervical degenerative disc disease, lumbar degenerative disc disease, right ankle osteoarthritis, right knee osteoarthritis, obesity, bilateral cataract surgery, corneal dystrophy, and myopia." (Tr. 61).   In fashioning Plaintiff's RFC, the ALJ determined, after "consideration of the entire record," that Plaintiff had the RFC to

perform light work[5] except he could never climb ladders, ropes, or scaffolds, that he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, that he could frequently handle and finger with the right dominant upper extremity, and that he must avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery. (Tr. 63).  With specific respect to visual impairments, the ALJ found that Plaintiff's "visual impairments as well as his reports of occasional balance issues restrict[ed] him to avoiding all exposure to hazards."  (Tr. 66).

A plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison*, 355 F.3d at 1276. Citing a list of possible symptoms, such as "glare," "seeing halos around lights," "pain or grittiness from tiny blisters on the surface of the cornea," and "headaches," along with "the likelihood of having effects on [his] vision" due to his visual impairments, Plaintiff argues that the ALJ improperly failed to account for any limitations.  (Doc. 15 at pp. 8-9).  However, Plaintiff fails to cite to any objective medical records documenting such an array of symptoms.  Nor does Plaintiff cite any opinion evidence supporting limitations based upon his visual impairments.  The ALJ considered the entire record when determining Plaintiff's RFC, as the ALJ properly discussed both the medical and non-medical evidence of record.

The ALJ noted that Plaintiff alleged in his function report that he had problems with, among other things, seeing  (Tr. 64, 295-96) but that "[w]hen questioned at the hearing as to what precluded him from working, [Plaintiff] testified he was unable to work due to knee and wrist

---

[5]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

problems." (Tr. 18-20, 26-27, 31, 64). In that regard, the ALJ specifically asked Plaintiff the following questions: "A good place to start for me is if you could put it in your own words, sir, why do you believe you're disabled?"; "[W]hat do you understand is that you've been diagnosed with? You go to the doctor, you give them your symptoms, the doctor diagnoses you. What's your understanding of what's wrong with the different parts in your body?"; "Okay, so, if you were to sum it up for me, you know, what are your medical problems that keep you from working fulltime?"; and "Okay, are there any other symptoms, conditions or limitations, sir, that you haven't told me about yet but also contribute to why you believe you're disabled?" (Tr. 18-20, 26-27). At no time did Plaintiff state that his visual impairments or any symptoms stemming from his visual impairments affected his ability to work. Further, when Plaintiff's attorney asked, "Mr. Kindred, is there anything else you want to tell the Judge about your medical conditions? Anything we haven't discussed yet?", Plaintiff answered, "I think we summed everything up besides my arthritis in my neck and all that I told her." (Tr. 31). The ALJ additionally noted that Plaintiff reported, among other things, that he had dizzy spells with vertigo and balance issues, that he could not lift over 20 pounds, and, regarding his daily activities,[6] that he could drive and use a cellphone. (Tr. 22, 29, 30, 64).[7]

---

[6]    *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of her impairments).

[7]    In his reply, Plaintiff makes the assertion that in his function report he only stated that he "ride[s] in a car." (Doc. 21 at p. 2). However, Plaintiff specifically testified that he drives unless he is hurting, apparently from one of his nonvisual impairments. (Tr. 29). Moreover, Plaintiff argues that "while his function report is checked with 'yes' next to whether or not he drives, below is an explanation as to why he does *not* drive his car" (Doc. 21 at p. 2) (emphasis in original)— implying that his visual impairment was the reason for his not driving. The explanation actually provided in the function report clearly lists the reason as "Car blown head gasket $750.00 don't have the money car in shop." (Tr. 293).

As to the objective medical evidence, the ALJ noted that Plaintiff received treatment for blurred vision in February 2019.  (Tr. 65).  The ALJ also noted that Plaintiff underwent a cataract phacoemulsification of the right eye with posterior chamber intraocular lens implant of the right eye on March 7, 2019, that he reported improved right eye functioning on April 12, 2019, that he underwent a cataract extraction on his left eye on April 30, 2019, and that he continued with follow-up care in the subsequent months.  (Tr. 65, 499).  The records cited by the ALJ showed that on July 26, 2019 Plaintiff reported that both his eyes were doing well, that he had no pain or irritation, and that he was recommended to get over-the-counter readers as needed.  (Tr. 65, 499).  Plaintiff's uncorrected distance vision was 20/25 in his right eye and 20/30-1 in his left eye.  (Tr. 65, 499).  The ALJ further stated that in May 2021 Plaintiff complained of blurred vision, was found to have presbyopia,[8] and was recommended for a follow-up in twelve months.  (Tr. 65, 615-17).  The records cited by the ALJ indicated that the history of Plaintiff's eye complaints involved blurred vision in mild severity in both eyes, that Plaintiff drove in the daytime and nighttime, that Plaintiff's distant and near visual acuity were 20/60 in each eye, and that Plaintiff was advised wearing glasses could be helpful.  (Tr. 65, 615, 617).

In considering the administrative findings of the State agency consultant at the reconsideration level, the ALJ found that the State agency assessment was inconsistent with Plaintiff's continued complaints of chronic pain in 2021 and reports of blurred vision.

The ALJ ultimately concluded as follows:

---

[8]   "Presbyopia is a refractive error that makes it hard for middle-aged and older adults to see things up close. ...  Presbyopia is a normal part of aging.  Everyone gets presbyopia as they get older—usually after age 45."  https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/presbyopia (last viewed January 4, 2024).

In sum, the above residual functional capacity assessment is supported by the claimant's oral and written testimony, the objective medical evidence, and the opinions of medical professionals. A thorough assessment of all of the evidence shows that the claimant is able to perform work at the light exertional level with additional postural, environmental, and manipulative limitations as described [in the decision].

(Tr. 68).  Plaintiff argues that the ALJ failed to properly incorporate his severe ocular/visual impairment into the RFC.  (Doc. 15 at p. 9).  Contrary to Plaintiff's argument, however, he ALJ was not required to incorporate limitations for his ocular/visual impairment merely on the basis that the ALJ found it to be a severe impairment.  *See Scott v. Kijakazi*, No. 1:21-CV-293, 2023 WL 2292582 at *6 (M.D. Ala. Feb. 28, 2023).  "'Severe impairments do not necessarily result in specific functional limitations ... [and i]f no specific functional limitations from a severe impairment exist, the ALJ need not include a corresponding limitation for that impairment in the RFC.'"  *Id.* (quoting *Owens v. Colvin*, No. 3:15-cv-409, 2015 WL 12856780 at *2 (M.D. Fla. Oct. 15, 2015) (citing *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009)) (*per curiam*); *Davis–Grimplin v. Commr, Soc. Sec. Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014) ("The ALJ had ample evidence on which to conclude that Davis did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment."); *Mancini v. Commisioner of Soc. Sec.*, No. 2:19-CV-798, 2021 WL 1087270 at *1 (M.D. Fla. Mar. 22, 2021) ("[T]he Court does not accept the proposition that a specific limitation must always be attributed to a 'severe impairment.'"); *Fortner v. Astrue*, No. 4:12-CV-00986, 2013 WL 3816551 at *6 (N.D. Ala. July 22, 2013) (citations omitted) ("The ALJ may thus 'incorporate' a claimant's severe impairments into an RFC by acknowledging and weighing those impairments in his report, without the impairments necessarily resulting in an imposition of impairment-specific work limitations in the RFC."); *Summerhill v. Comm'r of Soc. Sec. Admin.*, Case No. 3:20-05055-CV-RK, 2021 WL 4432479 at *4 (W.D. Mo. Sept. 27, 2021) (citation

omitted) (finding no error where the ALJ found that the claimant had several impairments but did not include any limitations related to those severe impairments in his RFC determination: "[a]n ALJ is not required to list and reject every possible limitation.").[9, 10]

Plaintiff also argues that the ALJ's evaluation of whether his visual impairments meet the requirements of Listings 2.02, 2.03, and 2.04 indicates that Plaintiff's impairments had a greater impact on his functioning than the ALJ found.  (Doc. 15 at p. 10).  At the fourth step of the

---

[9]    Plaintiff's reliance on *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) to argue that "all severe impairments are to be incorporated into the RFC finding" (Doc. 5 at p. 8), is misplaced.  In *Raduc*, the ALJ determined that the plaintiff's irritable bowel syndrome ("IBS") was a severe impairment but found that the plaintiff's IBS did not affect her RFC.  *Id*. at 898. The Eleventh Circuit found that the ALJ's analysis failed to properly discuss how IBS might affect the plaintiff's ability to perform her job duties, that the ALJ's decision was unclear as to whether and to what extent the ALJ discounted the plaintiff's testimony about her IBS symptoms, and that because the ALJ did not consider the effect of the plaintiff's IBS on her RFC it was unclear whether the ALJ had good cause to reject the treating physician's medical opinion that the plaintiff could not return to her past relevant work.  *Id*. at 898-99.  First, for the reasons discussed above, "[*Raduc*] does not stand for the conclusion that an ALJ must include limitations in an RFC based on any particular severe impairment."  *See Scott*, 2023 WL 2292582 at *6 n.5.  Second, unlike here, the plaintiff specifically testified about her limitation-causing IBS symptoms, and the plaintiff presented a medical opinion from her treating physician stating that the plaintiff was limited by her IBS—all of which the ALJ ignored.  *Raduc*, 380 F. App'x at 898-99; *see also Scott*, 2023 WL 2292582 at *6 n.5 (distinguishing *Raduc*). Plaintiff, however, presented no similar evidence here.

[10]    Plaintiff's reliance on *Kellerman v. Colvin*, No. 3:14CV295, 2015 WL 927060 (M.D. Ala. Mar. 4, 2015) is similarly misplaced.  (Doc. 21 at pp. 2-3).  In *Kellerman*, the court concluded that the ALJ failed to fully and fairly develop the record and that, as a result, the ALJ improperly determined the plaintiff's RFC without taking into consideration any limitations to the plaintiff's vision.  *Id*. at *3-6.  Unlike here, however, the plaintiff presented medical evidence from an examining doctor who noted that the plaintiff had blurred vision and "holes in his vision," and the plaintiff testified regarding his blurred vision.  *Id*. at *4.  Additionally, the ALJ believed that there was a necessity to secure additional evidence regarding the plaintiff's visual acuity before rendering a decision about his disability but later determined the plaintiff's RFC without including any such evidence into the administrative record.  *Id*. at *5.  Moreover, during the questioning of the vocational expert, there was some confusion regarding the effects of the plaintiff's blurred vision on his ability to perform other work available in the national economy, and the ALJ seemingly acknowledged that follow-up interrogatories on the issue might be needed.  *Id*. at *6. The facts in *Kellerman* thus are not similar to those in this case.

sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC.  *Tuggerson-Brown*, 572 F. App'x at 951-52.  However, impairments and limitations are not the same thing.  *Shipes v. Kijakazi*, No. 1:21-CV-80, 2022 WL 4116984 at *5 (M.D. Ala. Sept. 9, 2022) (citing *Jacobs v. Berryhill*, No. 5-17-CV-429, 2018 WL 3323764 at *4 (W.D. Tex. July 6, 2018), *report and recommendation adopted*, No. SA-17-CV-429, 2018 WL 4688775 (W.D. Tex. July 24, 2018) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) ("In arguing that the step-two and step-three findings on the severity of her mental impairments necessarily require imposition of functional limitations, Jacobs conflates separate inquiries. ... [A]n impairment is not the same thing as functional limitations on the ability to work that may be (or not) caused by an impairment.") (citations omitted)).  "Thus, while an ALJ is required to consider all impairments, he is not required to consider every possible limitation proposed by the administrative medical findings."  *Id.* (citing *Dyer*, 395 F.3d at 1211 (explaining that the ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole)); *Fortner*, 2013 WL 3816551 at *6 ("'Severe' impairments found at the second step of the analysis, however, do not necessarily 'impose significant work-related limitations' for the purposes of the subsequent RFC and hypothetical question steps."); *Ward v. Colvin*, No. CV G–15–095, 2016 WL 3919665 at *10 (S.D. Tex. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 3855871

(S.D. Tex. Jul. 15, 2016) ("[Claimant's] argument that the ALJ's evaluation at Steps 2 and 3 necessarily supports a decreased RFC [residual-functional-capacity] determination is improper."). Here, the record reflects that the ALJ properly evaluated Plaintiff's severe vision impairments in accordance with the regulations, determined that the impairments did not rise to the severity necessary to meet or equal a listed impairment, and proceeded in determining Plaintiff's RFC upon consideration of the record as a whole.

Plaintiff also argues that his past relevant jobs required occasional to frequent depth perception and near acuity but that the ALJ did not assess any specific limitations in Plaintiff's depth perception or visual acuity when fashioning the RFC. (Doc. 15 at p. 10). As previously discussed, the record reflects that the ALJ sufficiently analyzed Plaintiff's physical abilities by discussing all the relevant evidence of record and that the ALJ limited Plaintiff from working around hazards due to his visual impairments and occasional balance issues. (Tr. 66). Because the ALJ accounted for all of Plaintiff's impairments in fashioning the RFC, the court concludes that the RFC determination was supported by substantial evidence and that the ALJ did not commit reversible error.

### B.   Whether the ALJ properly investigated the facts in determining past relevant work

At step four of the sequential evaluation process, the ALJ will consider a claimant's RFC and the claimant's past relevant work to determine whether the claimant "can still engage in the kind of gainful employment that [the claimant] has undertaken in the past." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "At step four, the claimant carries a heavy burden of showing that his impairment prevents him from performing his past relevant work." *Id.* "The claimant bears the burden of showing that he cannot perform his past work as he actually performed it and as it is

14

generally performed in the national economy." *Simpson v. Com'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011) (citing SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. Jan. 1, 1982) and *Jackson v. Bowen*, 801 F.2d 1291, 1293-94  (11th Cir. 1986)); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) ("[I]t is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy."); *Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 282 (11th Cir. 2011) ("If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy.").

In considering whether a claimant can return to past relevant work, "[t]he ALJ must take all the duties of a claimant's past work into consideration and evaluate whether the claimant can still perform them in spite of the severe impairment or combination of impairments." *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).  For such purposes, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  SSR 82-62, 1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); *Cantu v. Comm'r of Soc. Sec.*, No. 2:19-CV-832, 2021 WL 960686 at *4 (M.D. Fla. Mar. 15, 2021).  However, "[t]he ALJ may rely on information contained in the Dictionary of Occupational Titles (DOT) to determine whether a claimant can perform his past relevant work."  *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018).  As Social Security Ruling 00-4p explains, the SSA "rel[ies] primarily on the DOT (including its companion publication, the SCO) for information

about the requirements of work in the national economy.  [The SSA] use[s] these publications at steps 4 and 5 of the sequential evaluation process."  SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000).  "Similarly, [20 C.F.R. §§ 404.1566(d), 416.966(d)] explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs 'will take administrative notice of reliable job information available' in the DOT.  This subsection places the DOT first in its list of reliable government sources.  What's more, other SSA Rulings describe the DOT as 'authoritative.'  Plainly the DOT is integral to disability hearings."  *Washington*, 906 F.3d at 1364-65 (citations omitted).

"The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'"  *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted); SSR 00-4P, 2000 WL 1898704 at *2; 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("We will ask you for information about work you have done in the past. We may also ask other people who know about your work.  ...  We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").  Nonetheless, "[g]enerally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work." *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (citing *Lucas*, 918 F.2d at 1573 n.2); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 918 (11th Cir. 2019) ("The testimony of a vocational expert is only required to determine whether the claimant's RFC permits her to do other work after she has met her initial burden of showing that she cannot do past work.").

Here, Plaintiff's RFC limited him to performing light work and included that he could never climb ladders, ropes, or scaffolds, that he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, that he could frequently handle and finger with the right dominant upper extremity, and that he must avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery. (Tr. 63). Even with those limitations, the ALJ found after reviewing the evidence of record (including the VE's testimony) that Plaintiff was capable of performing past relevant work as an apartment maintenance worker and small parts assembler and that such work did not require the performance of work-related activities precluded by the RFC. (Tr. 68). The ALJ expressly stated the following to that effect:

> In comparing the claimant's residual functional capacity with the physical and mental demands of his past relevant work, the undersigned posed a hypothetical question to the vocational expert in which she was to assume an individual of the claimant's age, education, and work experience, and who had the specific capacity and limitations set forth above in the claimant's residual functional capacity. The vocational expert testified that such an individual would be able to perform the claimant's past relevant work as a small parts assembler as generally performed in the national economy and as the claimant actually performed and as an apartment maintenance worker as actually performed. Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Therefore, based on the evidence of record, the undersigned finds that the claimant is able to perform his past work as a small parts assembler as generally performed in the national economy and as the claimant actually performed and as an apartment maintenance worker as actually performed.

(Tr. 69).

Plaintiff argues that "there is no way to know how the VE" reached the conclusion that Plaintiff performed the apartment maintenance worker job at the light exertional level. (Doc. 15 at pp. 11-12). Plaintiff asserts that the RFC failed to account for all of his severe impairments and his inability to concentrate as mentioned in his function report (Tr. 292), that the hypothetical questions posed to the VE failed to account for all of his severe impairments, including his visual

impairments, and that the ALJ ignored the VE's responses to the hypothetical questions and did not include any additional limitations from those responses into the RFC.  (Doc. 15 at pp. 12-13).

In determining Plaintiff's past relevant work, the VE testified that she listened to Plaintiff's testimony regarding his past work and reviewed Plaintiff's work history forms that were in the file.  (Tr. 32-33).[11]  During the hearing, Plaintiff testified as to one of his prior jobs as a maintenance technician where he conducted routine maintenance work at an apartment complex. (Tr. 16).  Plaintiff stated that he "did heating and air there too and patch[ed] holes in the walls, sheetrock, and doorknobs" and that if any of the tenants "had a problem with the doorknob or something, the lock or whatever, we'd go out and fix it."  (Tr. 16).  Plaintiff testified that he never lifted over fifteen pounds when performing the job of apartment maintenance worker. (Tr. 16-17).  Plaintiff also testified to another job where he worked on an assembly line and mainly stood all day assembling struts for vehicles.  (Tr. 17-18).  The VE testified that Plaintiff's work as an apartment maintenance worker, DICOT 382.664-010, 1991 WL 673265, was medium work according to the DOT, but based on Plaintiff's testimony during the hearing, Plaintiff actually performed the job at the light exertional level.  (Tr. 33-34).  The VE also testified that Plaintiff's past work as a small parts assembler, DICOT 706.684-022, 1991 WL 679050, was light work based on the DOT and as Plaintiff performed it.  (Tr. 34).[12]

---

[11]   Plaintiff incorrectly asserts that the "VE acknowledged [Plaintiff's work history forms were] ... the only evidence of record she reviewed."  (Doc. 15 at p. 11).

[12]   Plaintiff asserts that: "Exhibit 4E suggests that none of Mr. Kindred's past relevant work required him to stand and/or walk for any time.  Further, the exhibit is devoid of any time spent walking, standing, sitting, climbing, stooping, crouching, crawling, reaching, or performing any other type of activity.  (R. 276). ... Moreso, Exhibit 4E provides no weight which was occasionally or frequently lifted by Mr. Kindred when he performed such jobs."  (*Id.*).   The court finds Plaintiff's argument confusing.  In Exhibit E, Plaintiff listed the maintenance technician job along with three other jobs.  (Tr. 272-76).  Plaintiff admits in his argument that the exhibit is devoid of any information as to duration and weight regarding actions performed.  Plaintiff clearly chose not

Because the ALJ properly considered the testimony of Plaintiff and the VE, as well as the DOT descriptions, the court finds that there was sufficient information about the demands of Plaintiff's past work and that there was substantial evidence supporting the ALJ's determination that Plaintiff could perform his past relevant work. *Simpson*, 423 F. App'x at 884; SSR 82-61, 1982 WL 31387 at *2 ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" ); *Sexton v. Soc. Sec. Admin., Comm'r*, No. 4:21-CV-00624, 2022 WL 4236629 at *10 (N.D. Ala. Sept. 14, 2022) ("Because the ALJ relied upon [plaintiff's] hearing testimony, the vocational expert's testimony, and the DOT classifications, the court finds she obtained sufficient information to appropriately classify [plaintiff's] past relevant work.").  Moreover, Plaintiff's hearing attorney did not challenge or object to the classification of Plaintiff's past work and did not ask any questions of the VE during the hearing (Tr. 33-38).  Thus, Plaintiff essentially waived his current argument.  *See Brock v. Comm'r of Soc. Sec.*, No. 2:22-CV-368, 2023 WL 3815229 at *4 (M.D. Fla. June 5, 2023) (finding that the plaintiff had effectively waived her argument by failing to challenge the VE's alleged misclassification of her past relevant work); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122, 2022 WL 16555990 at *3 (M.D. Fla. Sept. 23, 2022) (finding that the ALJ was not obliged to

---

to supply the requested information in describing each job; and Plaintiff provided testimony as to the type of work he did as an apartment maintenance worker and that he could lift up to fifteen pounds. (Tr. 16-17). Plaintiff further argues that: "Exhibit 5E provides multiple jobs, all of which require walking and/or standing at least 8 hours a day. (R. 283-89). ...  Exhibit 5E notates that every job Mr. Kindred held required the lifting of 50 to 100 pounds. (R. 276, 283-89)." (Doc. 15 at p. 11). However, the ALJ asked Plaintiff about his job as a small parts assembler, which was not listed in Exhibit 5E (Tr. 282-89) but was listed in Plaintiff's detailed earning statements (Tr. 232-33, 243).  (Tr. 17-18).  Plaintiff provided a description of the job at the hearing (*Id.*), and the VE testified that he listened to Plaintiff's testimony concerning his past work.  (Tr. 33). The court thus finds the "conflicting evidence" argument without merit.

further investigate whether plaintiff's job as a real estate agent was past relevant work where the VE specifically testified regarding plaintiff's past work as a real estate agent and where plaintiff was represented by counsel at the hearing and did not raise any issue as to whether her work as a real estate agent was past relevant work); *New v. Comm'r of Soc. Sec.*, No. 5:12-CV-211, 2013 WL 3804846 at *3  (M.D. Fla. July 8, 2013) ("[T]he Commissioner correctly notes that the Plaintiff did not raise this issue to the ALJ, nor did her attorney object to the VE's testimony identifying Plaintiff's prior work as a housekeeper as past relevant work. Unfortunately for Plaintiff, because she failed to raise this issue to the ALJ or even object to the VE's testimony, the ALJ was not obligated to specifically address the concerns—or rather, arguments—that Plaintiff now raises."); *McDaniel v. Kijakazi*, No. 22-CV-21201, 2023 WL 5510277 at *14 (S.D. Fla. Aug. 10, 2023), *report and recommendation adopted sub nom. McDaniel v. Kijakazi*, No. 1:22-CV-21201,  2023 WL 5507774 (S.D. Fla. Aug. 25, 2023) (noting that several courts have found a claimant's failure to object or raise an argument before an ALJ relative to her past relevant work forecloses the claimant's ability to raise the issue for the first time on appeal; because plaintiff "did not challenge the VE's classification of her past relevant work as file supervisor, the ALJ did not err in classifying her past work as such"); *Sheila R. v. Kijakazi*, No. 1:20-CV-04180, 2022 WL 17078098 at *5 (N.D. Ga. Mar. 3, 2022) (where plaintiff argued that the VE did not properly classify any of plaintiff's past relevant work, the court found this argument lacking and noted, among other things, that plaintiff did not identify any DOT job number that was a closer match to the job she performed and that plaintiff's counsel did not object to the VE's classification of plaintiff's past relevant work or question the VE about his classification at the hearing); *Rivera v. Colvin*, No. 1:15-cv-146, 2016 WL 4424973 at *6 (N.D. Fla. Mar. 3, 2016), *adopted* at 2016 WL 4414792 (Aug. 18, 2016) (claimant failed to meet her burden at step four where she

offered no evidence to rebut the ALJ's determination and where her counsel had the opportunity to question both her and the VE regarding past relevant work); *Kolozs v. Comm'r of Soc. Sec.*, No. 2:22-CV-418, 2023 WL 4231630 at *6 (M.D. Fla. June 28, 2023); *Hall v. Comm'r of Soc. Sec.*, No. 6:19-CV-1066, 2020 WL 1673053 at *3 (M.D. Fla. Apr. 6, 2020) (noting that where the plaintiff did not challenge the VE's designation of past relevant work, did not question the VE about the designation, and did not provide evidence to rebut the designation or her ability to do that work, and where that the plaintiff "should have offered to provide more information after the VE found her past relevant work was dining room attendant or waiter-waitress informal," the plaintiff "failed to satisfy her burden at step four to demonstrate her work experience as a banquet server, restaurant server, and lane waitress did not constitute past relevant work as a waiter-waitress informal or was not properly classified by the VE"). *See also Kolozs v. Comm'r of Soc. Sec.*, No. 2:22-CV-418, 2023 WL 4231630 at *6 (M.D. Fla. June 28, 2023) ("[W]ithout an objection or other reason to doubt [the VE's] credibility, the [VE's] experience provides substantial evidence to support the ALJ's reliance on [the VE's] testimony.") (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010)).

With respect to Plaintiff's argument that the RFC failed to account for all of his severe impairments, Plaintiff failed to prove that he had additional limitations not reflected in the RFC. Plaintiff cites subjective complaints regarding additional limitations but fails to present objective evidence demonstrating how those symptoms limited his functional ability.[13]  The ALJ properly considered Plaintiff's subjective complaints and found that those complaints were not consistent

---

[13]   Citing his function report where he marked that he was unable to pay bills or handle a savings account (Tr. 293), Plaintiff asserts that "the ALJ provide[d] no mention of his ability to concentrate." (Doc. 15 at p. 12).  However, in the section in the function report for explaining his answer, Plaintiff stated, "don't have money unless I go and try to do a little job etc. HVAC" (Tr. 293), which does not show that a difficulty in concentration was the cause.

with the record.  (Tr. 63-64).

As to the hypothetical questions posed to the VE, the ALJ was not required to include Plaintiff's subjective complaints or other unsupported limitations in the hypothetical questions or accept the VE's testimony that included such unsupported limitations.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d at 1161 (An ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("[T]he ALJ may disregard an answer to a hypothetical question where she finds that elements of the hypothetical question are unsupported by the record.").  The ALJ properly considered the entire record in assessing Plaintiff's RFC, which the ALJ then included in the relevant hypothetical question to the VE.  (Tr. 34-36, 63, 68-69).  Plaintiff thus has failed to show that the ALJ erred.

### C.    Whether the ALJ posed complete hypotheticals to the Vocational Expert

Plaintiff contends that the ALJ erred by failing to craft an RFC that included severe eye impairments and by failing to pose any hypotheticals to the VE that contained such impairments.  (Doc. 15 at pp. 13-15).  For the reasons previously discussed, the ALJ properly considered Plaintiff's visual impairments along with the record as a whole in fashioning Plaintiff's RFC, and the RFC determination was supported by substantial evidence.  The ALJ thereafter included the RFC's limitations in the relevant hypothetical posed to the VE.  As also previously discussed, the ALJ was not required to include Plaintiff's subjective complaints or other unsupported limitations into the hypothetical question or accept the VE's response that included any such unsupported limitations.  *See* Section IV.B., *supra*; *see also Carroll v. Soc. Sec. Admin.*,

*Com'r*, 453 F. App'x 889, 894 (11th Cir. 2011) ("For a VE's answer to a hypothetical question to constitute substantial evidence, the question must encompass all of the claimant's mental and physical impairments.  However, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.") (internal citations omitted).

## V.    Conclusion

Plaintiff "'must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'"  *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185 at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (*per curiam*)); *Lanier v. Colvin*, No. CV414-004, 2015 WL  3622619 at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).  Put more simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand."  *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679 at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

After carefully and independently reviewing the record in light of the controlling legal standard, the court hereby concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 15) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 18) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

      **DONE** this the 22nd day of January 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**